1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

LESLIE DEAN,

Case No. 24-cv-01331-PCP

8

    Plaintiff,

9

  v.

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

10

OKCOIN USA INC.,

Re: Dkt. No. 16

11

    Defendant.

12
13

      Plaintiff Leslie Dean alleges that defendant OKCoin USA Inc. permitted a fraudulent,

14

unauthorized transfer of funds from his OKCoin cryptocurrency trading account to a third party.

15

OKCoin moves to compel arbitration, arguing that Dean agreed to OKCoin's Terms of Service

16

containing an arbitration provision when he signed up for the platform. For the reasons that

17

follow, the Court grants OKCoin's motion.

18

**BACKGROUND**

19

      Dean opened a cryptocurrency trading account with OKCoin in May 2022.[1] Dean alleges

20

that shortly after opening his OKCoin account, a series of fraudulent transactions occurred

21

wherein the funds he had placed in his account (totaling $95,000) were withdrawn without his

22

authorization or consent. Dean filed a formal complaint with OKCoin regarding the purportedly

23

unauthorized access to his account, but OKCoin denied his complaint.

24

      Dean thereafter filed this lawsuit against OKCoin alleging breach of fiduciary duty, breach

25

of the implied covenant of good faith and fair dealing, deceptive business practices in violation of

26

California's Unfair Competition Law (UCL), and negligence. Dean seeks monetary and injunctive

27
28

---

[1] The facts in both this paragraph and the following are drawn from Dean's complaint. Dkt. No. 1.

*United States District Court*
*Northern District of California*

relief including punitive damages.

OKCoin argues that Dean's claims must be resolved in arbitration because he entered into an arbitration agreement with OKCoin when he accepted OKCoin's Terms of Service upon opening his account.[2] According to OKCoin, Dean was presented with the following sign-up screen when he created his account in May 2022, Dkt. No. 16-1, at 3–4:




According to OKCoin, after Dean entered the information requested in the empty fields above, he clicked a "Sign up" button that was located directly below a conspicuous disclosure— separate from all other text—which stated: "By signing up, I agree to Okcoin **Terms of Service** and **Privacy Policy Statement**." Dkt. No. 16, at 8 (bold in original). OKCoin contends that the

---

[2] With its motion to compel arbitration, OKCoin provided a declaration by Product Lead Kevin Chan setting forth the sign-up process that OKCoin required all users to complete in May 2022. Dkt. No. 16-1. According to Chan, Dean could not have created an OKCoin account without completing this process. Though Dean does not dispute the details of this sign-up process, he argues that the declaration is inadmissible because there is no evidence that Chan was employed in May 2022. Dkt. No. 17, at 2 ("Declarant lacks personal knowledge, relies on assumptions, conclusions, and inadmissible hearsay."). But the Court finds the Chan declaration to be admissible because, per Chan's sworn testimony, he has personal knowledge as OKCoin's Product Lead of the sign-up process that users were required to follow to create an account in May 2022. Dkt. No. 18, at 3.

United States District Court
Northern District of California

1    bolded phrases "Terms of Service" and "Privacy Policy Statement" were hyperlinks that could

2    take Dean directly to a separate page on the OKCoin website containing the then-current Terms of

3    Service and Privacy Policy Statement. *Id*. at 9. The September 2021 Terms of Service, which

4    remained in effect in May 2022, included a section titled "DISPUTE RESOLUTION," the first

5    paragraph of which included an arbitration provision that read: "You and [OKCoin] agree to

6    arbitrate any dispute arising from these Terms or relating to the Service(s), except that you and

7    [OKCoin] are not required to arbitrate any dispute in which either party exclusively seeks relief

8    for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or

9    patents." *Id*. The Terms of Service further stated that arbitration would be governed by the Federal

10   Arbitration Act and administered by JAMS (Judicial Arbitration and Mediation Services) in San

11   Francisco, but that if arbitration before JAMS were "unavailable or impossible for any valid

12   reason," the arbitration would be conducted according to the rules and regulations of the AAA

13   (American Arbitration Association). Dkt. No. 16-1, at 22 (OKCoin Terms of Service).

## LEGAL STANDARDS

15        The Federal Arbitration Act (FAA) provides that a "written provision in ... a contract

16   evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

17   arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon

18   such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this

19   language makes clear, "an arbitration agreement is a contract like any other." *Bielski v. Coinbase,*

20   *Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). And like other contracts, arbitration agreements are

21   subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim*

22   *v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021). There is one way in which arbitration

23   provisions in a contract are distinct, however: "[A]s a matter of substantive federal arbitration law,

24   an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing,*

25   *Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). In other words, notwithstanding state law on

26   severability, an arbitration provision can be valid and enforceable even if other parts of the

27   contract it is in are not.

28

A purported arbitration agreement presents a few "gateway" issues: First, whether an agreement to arbitrate was actually formed. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021). Second, whether that agreement is "valid," *Bielski*, 87 F.4th at 1009, in other words, whether there are any defenses. Third, "whether the agreement encompasses the dispute at issue." *Id.* Normally, these gateway questions are resolved by a court. But parties to an arbitration provision can also enter a separate agreement to arbitrate some of these gateway questions—a "delegation" provision. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). And like any other arbitration provision, a delegation provision is severable. *See Buckeye*, 546 U.S. at 445. Not all gateway questions can be delegated, however. While "some 'gateway' issues ..., such as issues of validity and arbitrability, can be delegated," "parties cannot delegate issues of formation." *Ahlstrom*, 21 F.4th at 634–35.

All of this means that when presented with a contract that includes both an arbitration provision and a delegation provision, a reviewing court can consider three types of challenges: (1) formation challenges to the delegation provision, *see Ahlstrom*, 21 F.4th at 635; (2) validity and enforceability challenges to the delegation provision, *see Bielski*, 87 F.4th at 1009; and (3) formation challenges to the underlying arbitration provision, *see Ahlstrom* at 635. But if the delegation provision is valid, the court cannot consider validity or enforceability challenges to the underlying arbitration provision. *See also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide.").

Formation challenges to either a delegation provision or an underlying arbitration provision are a matter of state law. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th

Cir. 2022) ("In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation."). To challenge the validity or enforceability of a delegation provision, "a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments." *Bielski*, 87 F.4th at 1009. But while challenges must be specific, they need not be unique: A party "may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id.* at 1009–10.

If there is no delegation provision (or if one is successfully challenged), the Court must resolve all gateway questions: whether the arbitration agreement was formed, whether there are defenses or validity challenges to that agreement, and whether that agreement covers the dispute.

If the Court is "satisfied that the making of the agreement for arbitration ... is not in issue" it must "make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The summary judgment standard applies. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Court must "give to the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007).

**ANALYSIS**

**I.    An Arbitration Agreement Was Formed.**

OKCoin moves to compel arbitration of Dean's claims pursuant to the arbitration provision in OKCoin's Terms of Service. Dean responds that an agreement to arbitrate was never formed because OKCoin's sign-up process did not provide him with reasonably conspicuous notice of the arbitration provision in its Terms of Service. *See Berman*, 30 F.4th at 856 (holding that "an enforceable [arbitration agreement] will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.").[3] Specifically, he contends that the

---

[3] Dean separately argues that because there is no signature on the Terms of Service, there is no evidence of a "meeting of the minds." Dkt. No. 16, at 11–12. But the Ninth Circuit has repeatedly enforced similar clickwrap agreements without the presence of a signature. *See, e.g.*, *Nguyen v.*

bolded notice was not reasonably conspicuous because: (1) the words constituting the notice were the same black color as surrounding text; (2) the notice was the same font size as the surrounding text; and (3) the notice did not use all capital letters. *See, e.g.*, *Massel v. SuccessfulMatch.com*, 2024 WL 802194, at *5 (N.D. Cal. Feb. 27, 2024) (holding that underlining the words "Terms of Service" alone was insufficient to provide reasonable notice that the words were hyperlinked to those terms and the arbitration provision therein); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024) (holding that a user had notice of the Terms of Service where the text containing a hyperlink to those terms was in a contrasting bright green color).

OKCoin responds that the Court must consider the full context of the transaction in evaluating whether an agreement to arbitrate was formed. *See Keebaugh v. Warner Bros. Entertainment Inc.*, 100 F.4th 1005, 1017 (9th Cir. 2024) (holding that courts must evaluate "the full context of the transaction" and consider whether "that type of transaction contemplates entering into a continuing, forward-looking relationship governed by terms and conditions."). In particular, OKCoin argues that Dean would have known when signing up for OKCoin that he was entering a continuing relationship governed by certain terms and conditions because he was creating an ongoing account with a cryptocurrency trading platform rather than entering into a trivial, one-time purchase.

The Court agrees with OKCoin that, under the specific circumstances presented here, Dean was provided with reasonably conspicuous notice of its Terms of Service when he created his OKCoin account.

First, in the full context of the transaction Dean should have known that he was entering into a continuing relationship with OKCoin that would be governed by certain terms and conditions. In *Keebaugh*, the Ninth Circuit contrasted the completion of a "full registration process" reflecting "some sort of continuing relationship that would have put users on notice for a link to the terms of that continuing relationship" from a "typical one-and-done" transaction such as purchasing electronics at a fire sale. 100 F.4th at 1019–20 (citing *Nguyen*, 763 F.3d at 1173).

---

*Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014).

United States District Court
Northern District of California

1    Here, Dean created an OKCoin account and then deposited nearly $100,000 into his account,

2    presumably with the intent of purchasing and selling cryptocurrencies on the platform. A

3    reasonable consumer would understand, in creating a cryptocurrency trading account and then

4    depositing a substantial sum of money with the account provider, that the relationship would be

5    governed by contractual terms of some kind.

6         Indeed, Dean effectively admits as much by asserting a claim for breach of the implied

7    covenant of good faith and fair dealing. Dkt. No. 1, at 11. Such a claim depends on the existence

8    of a contractual relationship between the parties. *See Austero v. National Cas. Co.*, 62 Cal. App.

9    3d 511, 515 (1976) ("Although an action for bad faith breach of the covenant of good faith and

10   fair dealing sounds in tort, the duty of good faith and fair dealing derives from and exists solely

11   because of the contractual relationship between the parties."). By asserting this claim, Dean

12   implicitly acknowledges that he was aware when he signed up for the platform that he was

13   entering into a contractual relationship with OKCoin.

14        That Dean asserts a claim that depends upon his contract with OKCoin may be enough to

15   hold him to the terms of that contract, including its arbitration provision. The Court need not rest

16   its decision on that ground alone, however, because in the context of Dean's transaction with

17   OKCoin he also received sufficiently conspicuous notice of the terms of that contract. Although

18   the hyperlinked text through which Dean could have accessed OKCoin's Terms of Service was not

19   presented in a different color from the other text, it was bolded in a manner unlike anything else

20   on the sign-up page except for the word "Login" located further down the page. In context, that

21   word ("Login") was obviously hyperlinked because existing users would have to click the word in

22   order to log into their accounts. This feature of the webpage thus provided strong evidence that the

23   identically-formatted text of "Terms of Service" and "Privacy Policy Statement" was also

24   hyperlinked.

25        Under these circumstances, the content of OKCoin's Terms of Service was "reasonably

26   conspicuous" enough to put Dean on notice of those terms. Notwithstanding the lack of a

27   contrasting font color, different font size, or use of capital letters, the treatment of the hyperlinked

28   text in contrast to almost all other text on the page except for the "Login" link provided Dean with

United States District Court
Northern District of California

7

sufficient notice that he could access the terms by clicking on the text. *See Berman*, 30 F.4th at 856 (holding that "a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it").[4]

The undisputed evidence before the Court thus establishes that Dean reasonably should have been aware at the time he created his OKCoin account both that his relationship with OKCoin would be governed by contractual terms and that he could review those terms by clicking the "Terms of Service" link on the sign-up page. These facts are sufficient to establish the formation of a contractual agreement between Dean and OKCoin governed by OKCoin's Terms of Service, including the arbitration provision therein.

## II.     The Arbitration Agreement Lacks A Delegation Provision.

The inquiry does not end there, however. Like any other contract, an arbitration agreement must also be valid and enforceable. *Bielski*, 87 F.4th at 1009. While a Court generally resolves this gateway question, parties to an agreement can also delegate the question to an arbitrator. *Rent-A-Center*, 561 U.S. at 70. OKCoin argues that by incorporating the JAMS and/or AAA rules in the Terms of Service, the arbitration agreement here contains such a delegation.[5] *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Caviani v. Mentor Graphics Corp.*, 2019 WL 4470820, at *4 (N.D. Cal. Sept. 18, 2019) (finding that incorporation of "JAMS rules by reference is generally sufficient" to delegate arbitrability to the arbitrator) (citing *Oracle America v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013)). Notably, in *Nguyen v. OKCoin USA Inc.*, the Court considered the same OKCoin arbitration agreement at issue here and concluded that, although delegation to JAMS was unavailable because the equal fee-splitting provision violated JAMS's policy limiting a consumer arbitration fee to $250, the

---

[4] By contrast, the text at issue in *Berman* was in "tiny gray font considerably smaller than the font used in the surrounding website elements." *Id.*

[5] The Terms of Service state: "The JAMS Streamlined Arbitration Rules & Procedures, as modified by this Agreement, shall apply. … If arbitration before JAMS is unavailable or impossible for any valid reason, the[n] such arbitration will be conducted by, and according to the rules and regulations then in effect of, the [AAA]." Dkt. No. 16-1, at 22.

1   backup AAA rules, including their delegation clause, applied. 2023 WL 2095926, at *4 (N.D. Cal.

2   Feb. 17, 2023) (finding a "valid delegation clause to the AAA" because "unlike JAMS, the AAA

3   does not set limits for fee requirements").

4          The Court disagrees with OKCoin and the rationale in *Nguyen*. Whether a contractual

5   agreement incorporates the terms of another document presents a matter of state contract law. *See*

6   *Goceri v. Amazon.com, Inc.*, 2024 WL 1007868, at *3 (N.D. Cal. Mar. 8, 2024).[6] California law

7   governs OKCoin USA Inc.'s Terms of Service. Dkt. No. 16-1, at 22 ("These Terms and your use

8   of the Service(s) will be governed by and construed in accordance with the laws and regulations of

9   the jurisdiction where the applicable Party … is incorporated: (1) Users of OKCoin USA Inc. –

10  State of California law applies.").

11         Under California law, for a contract to incorporate the terms of a separate document,

12  "reference to the incorporated document … must be clear and unequivocal and the terms of the

13  incorporated document must be known or easily available to the contracting parties." *Slaught v.*

14  *Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994). Because the arbitration agreement here

15  incorporates both the JAMS Streamlined Arbitration Rules & Procedures and/or the AAA rules

16  and regulations as a backup, the reference to arbitration rules is not "clear and unequivocal." *Id.*

17  Had the arbitration agreement referenced to *only* the JAMS Streamlined Arbitration Rules &

18  Procedures, the reference might have been clear enough to be incorporated, assuming the specific

19  rules were "easily available to the contracting parties." *Shaw v. Regents of Univ. of Cal.*, 58 Cal.

20  App. 4th 44, 54 (1997) ("The contract need not recite that it incorporates another document, so

21  long as it guides the reader to the incorporated document.") (cleaned up). But here, the agreement

22  also confusingly incorporates the AAA "rules and regulations" if arbitration before JAMS "is

23  unavailable or impossible for any valid reason." Dkt. No. 16-1, at 22. And a general reference to

24  the AAA rules and regulations alone does not provide clear and unequivocal notice to the

25

26  _____

27  [6] The issue addressed by the Ninth Circuit in *Brennan* was not whether the agreement at issue
    validly incorporated the terms of a different document, but whether that incorporation was
28  sufficiently clear and unmistakable to satisfy the separate requirements of the FAA. *See* 796 F.3d
    at 1130 (applying the "clear and unmistakable evidence" standard of "federal arbitrability law").

United States District Court
Northern District of California

1  contracting parties of which document is being incorporated. *See Goceri*, 2024 WL 1007868, at \*4

2  (holding that a reference to the AAA's rules, without specifying one particular set of rules, does

3  not incorporate them into an arbitration agreement because the AAA's website includes 56

4  documents on its "Active Rules" page). Given the uncertainty over which set of rules is referenced

5  in the parties' arbitration agreement here, the Court cannot find that any specific document is

6  incorporated into the agreement. Absent the incorporation of a delegation provision, the Court

7  must decide for itself the gateway questions of whether the arbitration agreement is valid and

8  whether the agreement covers the dispute at issue.

9  **III.     The Arbitration Agreement Is Valid and Encompasses Dean's Claims.**

10        Dean argues that the arbitration provision is invalid because it is unconscionable.

11  "Unconscionability consists of both procedural and substantive elements. The procedural element

12  addresses the circumstances of contract negotiation and formation, focusing on oppression or

13  surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of

14  an agreement's actual terms and to assessments of whether they are overly harsh or one-sided."

15  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246–47 (2012).

16  "The prevailing view is that procedural and substantive unconscionability must both be present in

17  order for a court to exercise its discretion to refuse to enforce a contract or clause under the

18  doctrine of unconscionability." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015).

19  Dean argues that the provision is procedurally unconscionable because it was presented on a "take

20  it or leave it basis" without an opportunity to opt out. Dkt. No. 17, at 19–20. He argues that the

21  arbitration provision was substantively unconscionable because the parties are required to split the

22  JAMS arbitrator fees and expenses equally and the backup AAA rules are one-sided. *Id.* at 20–21;

23  Dkt. No. 16-1, at 22 ("You and the applicable Parties shall split the JAMS arbitrator fees and

24  expenses equally.").

25        Dean is correct that the arbitration agreement is procedurally unconscionable because Dean

26  "could either accept the terms and use [OKCoin's services], or reject them and forgo use."

27  *Davenport v. Nvidia Corp.*, 2024 WL 832387, at \*5 (N.D. Cal. Feb. 28, 2024). The Terms of

28  Service do not provide any mechanism for consumers to opt out. Such "take-it-or-leave-it

adhesion contracts always contain 'some degree of procedural unconscionability.'" *Bielski*, 87 F.

4th at 1014 (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 915 (2015)).

As to substantive unconscionability, the first question is which organization's rules will
govern any arbitration conducted pursuant to OKCoin's Terms of Service. In this respect, the
Court agrees with the holding in *Nguyen* that arbitration under JAMS is unavailable because
OKCoin's Terms of Service do not comply with JAMS's minimum standards of procedural
fairness, including the requirements that: "(1) a consumer is not required to pay more than the
$250 fee, (2) no party is precluded from seeking remedies in small claims court, and (3) the
consumer has a right to an in-person hearing in their hometown area." 2023 WL 2095926, at *3.
The Terms of Service here require equal fee-splitting which could exceed $250 for the consumer,
do not contain a provision for claims to be brought in small claims court, and fix the location of
arbitration to San Francisco without the consumer's agreement.

The unenforceable JAMS provision can be severed from the parties' agreement. *Serpa v.*
*Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013) ("When … the arbitration
agreement is not otherwise permeated by unconscionability, the offending provision, which is
plainly collateral to the main purpose of the contract, is properly severed and the remainder of the
contract enforced.") (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83,
122 (2000)). Other courts in this District have similarly severed JAMS provisions in arbitration
agreements that conflict with JAMS's rules. *See, e.g.*, *Pope v. Sonatype, Inc.*, 2015 WL 2174033,
at *6 (N.D. Cal. May 8, 2015) ("Although Sonatype inserted two clauses that appear to conflict
with JAMS rules, simply severing those provisions … cures the unconscionability as to those
terms and preserves the intent of the Agreement.").

Because arbitration before JAMS is unavailable, any arbitration between the parties will be
conducted by AAA pursuant to its rules.[7] The question then becomes whether arbitration pursuant
to the AAA rules presents issues of substantive unconscionability. Dean contends that the AAA

---

[7] In contrast to JAMS, the AAA rules permit fee splitting, do not require claims to be able to be
brought in small claims court, and are less explicit on where the arbitration must be held. *Nguyen*,
2023 WL 2095926, at *4. These features of OKCoin's Terms of Service therefore do not make
arbitration before AAA unavailable.

1    rules are substantively unconscionable because they limit the number of depositions. Dkt. No. 17,

2    at 23. The California Supreme Court held just this month, however, that such discovery limits in

3    arbitration are not substantively unconscionable. *Ramirez v. Charter Commc'ns*, *Inc.*, 2024 WL

4    3405593, at *11–12 (Cal. July 15, 2024) (holding that a discovery provision that allowed for only

5    four depositions was not substantively unconscionable).[8]

6          Dean also contends that the arbitration agreement is substantively unconscionable because

7    OKCoin unilaterally carves out its right to collect a debit balance in the Superior Court of

8    California. Dkt. No. 17, at 14.[9] But the "exemption of debt collection claims from [an] arbitration

9    provision does not render the provision unenforceable for lack of mutuality, because debt

10   collection is inherently one-sided and it would not make sense to require a financial institution"

11   such as OKCoin "to arbitrate every time it attempted to collect on an unpaid bill." *Ventura v. 1st*

12   *Fin. Bank United States*, 2005 U.S. Dist. LEXIS 50253, at *13 n.3 (N.D. Cal. Sep. 29, 2005);

13   *Cohen v. CBR Sys.*, *Inc.*, 625 F. Supp. 3d 997, 1004 (N.D. Cal. 2022) ("[A]llowing defendants to

14   rely on collection agencies for limited purpose of collecting past due accounts," rather than

15   pursuing such claims in arbitration, "is not so one-sided as to shock the conscience.").

16         In short, Dean has not sufficiently alleged both procedural and substantive

17   unconscionability. The arbitration agreement therefore cannot be invalidated on that ground.

18         Dean further argues that the arbitration provision is invalid as to his statutory claims

19   because it prohibits public injunctive relief in any forum in violation of the California Supreme

20

21   _____

22   [8] Dean suggests that the agreement unlawfully limits the number of depositions to one. Dkt. No.
     17, at 23. In *Ramirez*, the Court liberally construed an ambiguous provision in the arbitration
23   agreement stating that the "arbitrator will decide all discovery disputes related to the arbitration"
     to hold that the arbitrator could grant additional discovery and permit depositions in excess of four
24   if needed. *Id.* at *12 (concluding that "the arbitrator has authority to order additional discovery if
     the arbitrator determines that action is necessary to allow fair arbitration of the claim"). The Terms
25   of Service here state that "the right to discovery may be more limited in arbitration than in court,"
     but otherwise do not limit the arbitrator's ability to allow additional depositions. Dkt. No. 16-1, at
26   22. As in *Ramirez*, this Court interprets the arbitration provision here to permit the arbitrator to
     grant additional discovery beyond one deposition if necessary. "Such an interpretation of the
27   provisions eliminates any unconscionability." *Ramirez*, 2024 WL 3405593, at *12.

     [9] The Terms of Service state: "The foregoing arbitration provision shall not apply to Okcoin's
28   efforts to collect a debit balance [which] may be brought by Okcoin in Superior Court of
     California." Dkt. No. 16-1, at 22.

Court's *McGill* rule. Dkt. No. 17, at 18; *see McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).[10] But Dean is not seeking public injunctive relief in this lawsuit. Though Dean seeks injunctive relief to enjoin OKCoin from engaging in future unlawful activities and to require OKCoin to engage in corrective action to secure customer accounts, this relief is sought in an individual capacity. Dkt. No. 1, at 16. By contrast, public injunctive relief "must have the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public, cannot constitute the pursuit of representative claims or relief on behalf of others, and should present diffuse benefits to the general public as a whole." *Cal. Crane School, Inc. v. Google LLC*, 2024 WL 1221964, at *5 (N.D. Cal. Mar. 21, 2024) (citing *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021)). The injunctive relief requested here does not seek to prevent future violations of the law for the benefit of the general public as a whole but only for Dean, so the arbitration agreement is not invalid under the *McGill* rule.

Finally, Section 17 (Dispute Resolution) states that the parties "agree to arbitrate *any* dispute arising from these Terms or relating to the Service(s)" except intellectual property disputes. Dkt. No. 16-1, at 22 (emphasis added). This language of the agreement sweeps broadly, and Dean's claims clearly fall within the scope of arbitration.

## CONCLUSION

For the reasons set forth above, OKCoin's motion is granted and this matter shall be stayed pending the completion of any arbitration before AAA. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). OKCoin shall notify the Court within 14 days after the arbitration is completed, and shall submit a one-page status report by the first day of every September and March in the meantime.

---

[10] The Terms of Service state: "To the extent permissible by law, all claims must be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class, collective action or representative proceeding. The arbitrator may not consolidate more than one person's claims or engage in any class arbitration." Dkt. No. 16-1, at 23.

13

**IT IS SO ORDERED.**

Dated: July 23, 2024

_____

P. Casey Pitts
United States District Judge